IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :

v. : CRIMINAL NO. 09 – 813 -PBT

JON J. LACKNER :

### DEFENSE RESPONSE TO GOVERNMENT'S SUPPLEMENTAL JURY INSTRUCTIONS AND MEMORANDUM

The government misconstrues the law on entrapment and has proposed jury instructions containing errors.

### INDUCEMENT

The Supreme Court says that to "induce" means "[t]o lead on; to influence; to prevail on; to move by persuasion or influence." *Global-Tech Appliances, Inc. v. SEB S.A.* 2011 WL 2119109, 4 (U.S.) (U.S.,2011), *quoting*, Webster's New International Dictionary 1269 (2d ed.1945). The examples of inducement presented by the government, "persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship", *U.S. v. El-Gawli* 837 F.2d 142, 149 (C.A.3 (N.J.),1988) while not inaccurate, are not comprehensive. They are, as the court further noted, merely a "list of examples...presented as such and not as a finite group of possibilities." *Id.* * 150 Considering the different factual scenario presented by this case as opposed to the *El-Gawli* case which involved illegal arms sales, the Court should incorporate into the jury instructions the Supreme Court's definition in *Global-Tech* as well, as drafted below in the Defense Proposed Jury Instruction on Entrapment.

Further, the Court should emphasize to the jury that the specific inducement they are being asked to find or rule out is law enforcement inducement *to commit the charged offenses.*

1

## PREDISPOSITION

As the government agrees, predisposition or lack thereof lies at the very heart of an entrapment defense. The government relies heavily on *United States v. Lakhani*, 480 F. 3d 171 (3d Cir. 2007), another arms-sales-to-terrorists case, for its articulation of this element. However, the controlling Supreme Court jurisprudence on this point, *Jacobson v. U.S.* 503 U.S. 540, 549, 112 S.Ct. 1535, 1540 (1992), is highly relevant as it concerns allegations of receiving child pornography through the mail.

*Jacobson* held that predisposition must pre-date the defendant's first contact with government agents: "the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act *prior to first being approached by Government agents*." *Id.* (emphasis added). Relying on the Second Circuit's test for predisposition, *Lakhani* set forth three methods for disproving the defense of entrapment : "(1) an existing course of criminal conduct similar to the crime for which the defendant is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement." *Lakhani* 480 F. 3d at 179, *quoting U.S. v. Gambino*, 788 F.2d 938, 945.

As to the first method, the seven months covering the interactions with Det. Sciscio cannot be considered as such a "course of conduct"; *Jacobson* requires that independent evidence of a prior course of conduct similar to the charged offenses must be proffered by the government.

As to the second test, again, *Jacobson* informs the question of when the "already formed design" must have been formed. To the extent this test is used, *Jacobson*'s teaching is that the design must have been already formed prior to the defendant's first conversation with Det. Sciscio.

As to the third test, arguably, a ready response to the inducement, if found, would be relevant, yet it certainly would not be dispositive. The government must demonstrate independent prior evidence

of predisposition to commit the charged offenses, aside from any suggestive internal evidence that may be contained in the interactions between the defendant and the detectives.

Similarly, *Jacobson* informs the Third Circuit's own suggested test, which is as follows: "the character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and the nature of the inducement or persuasion supplied by the Government." *Lakhani* 480 F. 3d at 179, *quoting, U.S. v. Fedroff,* 874 F.2d 178, 184.

To the extent that any element of this test relates to predisposition rather than inducement, *Jacobson* requires that the government make a showing of behavior preceding the initial police contact with the defendant, and the Jury Instructions must reflect that.

## THE GOVERNMENT'S PROFFERED PREDISPOSITION EVIDENCE MUST BE EXCLUDED

The government indicates that it may need to present evidence of predisposition in its case-in-chief if the defense introduces evidence supporting an entrapment defense. It is anticipated that the government has in mind the videos that underlie the now-severed Counts Six and Seven of the Superseding Indictment. It is further anticipated that the government may also intend to introduce several "chats" of a sexual nature between the defendant and individuals who held themselves out to be under age. None of this evidence is admissible as evidence of predisposition, pursuant to *Jacobson*.

*Jacobson* teaches that the predisposition the government must prove beyond a reasonable doubt is the specific predisposition to commit the charged criminal offenses.

In *Jacobson*, the defendant was convicted of receiving child pornography through the mails, after he responded to government inducement and ordered it to be sent. The Supreme Court reversed

3

his conviction, citing government failure to prove predisposition. The sole evidence of predisposition was that, some two and a half years prior to the charged offenses, the defendant had ordered two magazines from an adult bookstore called Bare Boys I and Bare Boys II, which contained images of naked preteen and teenage boys, but not engaged in any sexual acts. *Jacobson,* 503 U.S. at 542-543. Rejecting the government argument in that case that it should be allowed to proffer these magazines as evidence of predisposition, the Supreme Court stated:

> this is scant if any proof of petitioner's predisposition to commit an illegal act, the criminal character of which a defendant is presumed to know. It may indicate a predisposition to view sexually oriented photographs that are responsive to his sexual tastes; but evidence that merely indicates a generic inclination to act within a broad range, not all of which is criminal, is of little probative value in establishing predisposition.
> 
> Furthermore, petitioner was acting within the law at the time he received these magazines. Receipt through the mails of sexually explicit depictions of children for noncommercial use did not become illegal under federal law until May 1984, and Nebraska had no law that forbade petitioner's possession of such material until 1988. Neb.Rev.Stat. § 28-813.01 (1989). Evidence of predisposition to do what once was lawful is not, by itself, sufficient to show predisposition to do what is now illegal, for there is a common understanding that most people obey the law even when they disapprove of it. This obedience may reflect a generalized respect for legality or the fear of prosecution, but for whatever reason, the law's prohibitions are matters of consequence. Hence, the fact that petitioner legally ordered and received the Bare Boys magazines does little to further the Government's burden of proving that petitioner was predisposed to commit a criminal act.

*Jacobson,* 112 S.Ct. at 1541 - 1542 (1992).

The parallels here are striking. The webcam video and chats may prove the defendant's predisposition to view webcam transmissions and engage in chats responsive to his sexual tastes, but this is evidence of a generic inclination to act within a broad range, not all of which is criminal. It does not inform the question of whether he is predisposed to commit the federal crimes he is charged with, i.e., to use the internet to persuade, induce, entice or coerce a minor under 18 years old to engage in

sexual activity for which a person could be charged with a crime, nor a predisposition to cross state lines in order to engage in illicit sexual conduct with another person, not to transmit obscene matter to a minor under 16 years old.

Importantly, although ignorance of the law is not an excuse for criminal *conduct*, it is highly relevant where evidence is proffered for the precise, specific purpose of revealing a pre-existent criminal *mens rea*. The webcam transmission depicting the 16 year old girl in Turkey proves that the defendant has a taste for females willing to perform certain acts. It in no way proves that he has a taste for, or a willingness to orchestrate, induce or view sexually explicit conduct in, *criminally* young females. The question of the legality of the webcam transmissions, and his knowledge thereof, is critical here. Apart from what conduct is alleged to have occurred in either the web transmission or the chats, it cannot be evidence of predisposition unless it can be shown that the defendant knew that it was criminal conduct.

In fact, and quite importantly, under the laws of the state of New Jersey, where the Defendant was at all times he engaged in the proffered "predisposition" conduct, the webcam transmissions were *not* criminal conduct in the first place. Rather, it was perfectly legal for defendant to solicit and view, since New Jersey's age of consent is 16, and New Jersey's relevant laws permit such conduct in persons over the age of 16. *See*, N.J.S.A. 2C:24-4 (b) (1) Endangering Welfare of Children. As to the chats, not only did they involve no efforts to arrange meetings, but there is absolutely no evidence that the participants were indeed under age, rather than being among the millions of adult persons who routinely use the internet for "role-playing in the context of sexually explicit conversations" where "one can become a 'fantasy character.'" *U.S. v. Joseph* 542 F.3d 13 (2nd Cir. 2008).

Thus, in order for any of the government's proffered evidence to be admissible to show predisposition, it would first of all have to be shown to reveal actual criminal conduct, which it can only partly do, and, more importantly, the government would have to be able to show that the defendant

was aware that it was criminal conduct, which it cannot do at all. Therefore, all such evidence should be precluded.

## THE GOVERNMENT'S FORMULATION OF THE JURY CHARGE SHOULD BE REJECTED IN FAVOR OF THE DEFENSE FORMULATION

The government's proposed jury charge includes several inadequately clear formulations, as expounded above, and further, wrongly articulates the final charge to the jury, making acquittal appear to be optional, rather than mandatory, if the government fails to meet its burden of proof. The government's version reads: "If, after considering all the evidence, you have a reasonable doubt that Mr. Lackner would have committed the offense charged without the government's inducement, you *should* find the defendant not guilty." (Gov't Instructions, p. 6)(emphasis added) In reality, if the jury entertains a reasonable doubt as to the defendant's guilt after consideration of the evidence, it *must* find him not guilty; conviction is not an option where there is a reasonable doubt as to guilt.

## DEFENSE PROPOSED INSTRUCTION ON ENTRAPMENT

Dr. Lackner has raised as a defense that he was entrapped by police officers to commit the offenses charged in Counts One through Five of the indictment. A defendant may not be convicted of a crime if he was entrapped by the police to do the acts charged. The police are permitted to use undercover agents, deception, and other means of providing opportunities for an unwary criminally-minded person to commit a crime, but the law does not permit the police to induce an unwary innocent person into committing a criminal offense.

The defense of entrapment includes two inquiries:

First, did the police induce Dr. Lackner to commit the offense?

Second, was Dr. Lackner predisposed, that is, ready and willing to the commit the offense before he was first approached by the police?

It is the government's burden to prove beyond a reasonable doubt that Dr. Lackner was not

6

entrapped; it is not Dr. Lackner's burden to prove that he was entrapped. Thus, you may find Dr. Lackner guilty of the offenses charged in Counts One Through Five only if you find that, in addition to proving the elements of each offense, the government also proved beyond a reasonable doubt, as to each offense, either (1) that the police did not induce the commission of the offense; or (2) that Dr. Lackner was predisposed, meaning that Dr. Lackner was ready and willing to commit the offense before the police first spoke to him about the particular offense in each count.

You should first consider whether there is any evidence that the police induced Dr. Lackner to commit each of the offenses in Counts One through Five. Police actions that could amount to inducement include, among other things, leading on, influencing, persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship. The police do not induce a person to commit an offense if they merely approach that person, or solicit, request, or suggest that he commit the offense, or afford an opportunity or facilities to commit the offense. You should also separate out in your mind any possible instances you may find in which Dr. Lackner induced another person to do something which is not the subject of one of the charged crimes. Such a finding of inducement on Dr. Lackner's part unrelated to one of the charges, is not relevant and should not affect your determination as to whether the police induced him to commit the charged offenses. If you find, as to each count, that the government proved beyond a reasonable doubt that the police did not induce Dr. Lackner to commit the offense, then you should find that there was no entrapment on that count and you need not consider this defense any further.

However, if you determine there is reasonable doubt as to whether the police did not induce Dr. Lackner to commit the offense charged in a given count, then you must decide whether the government proved beyond a reasonable doubt that Dr. Lackner was predisposed – that is, that Dr. Lackner was ready and willing to commit the offense charged in that count before the police first approached him. In deciding this question, you should consider all the evidence, including any evidence about whether

the police initially suggested the criminal activity; the nature of the police inducement or persuasion; whether Dr. Lackner had already formed an intent or design to commit the offense charged prior to his first contact with the police; whether Dr. Lackner was, at the time his contact with the police began, already engaged in an existing course of criminal conduct similar to the offense charged; whether Dr. Lackner was engaged in criminal activity for profit; and whether Dr. Lackner showed a willingness to commit the offense or showed any reluctance that was overcome by repeated government inducement or persuasion; and evidence of Dr. Lackner's character or reputation, including whether he has any prior record of criminal convictions. If, after considering all the evidence, you have a reasonable doubt that Dr. Lackner would have committed the offense charged without police inducement, you must find the defendant not guilty.


Dated: June 14, 2011
       Garden City, New York

                                        Respectfully requested,


                                        _____/s/ Bruce Barket_____
                                        Bruce A. Barket, Esq.
                                        QUADRINO & SCHWARTZ, P.C.
                                        666 Old Country Road, 9th Fl.
                                        Garden City NY, 11530
                                        (516) 745-0101
                                        (516) 745-0844 Fax

                                        Attorney for Jon J. Lackner

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------X
**UNITED STATES OF AMERICA,**      :      Criminal No. 09-CR-813 (PBT)
                                   :
v.                                 :
                                   :
**JON J. LACKNER,**                :
        Defendant           :
------------------------------------------------------------X

CERTIFICATION OF SERVICE

     I certify that on June 14, 2011, a true and correct copy of the Defense Response to Government's Supplemental Jury Instructions and Memorandum have been filed electronically with the Clerk of Court through the CM/ECF system and a copy served this date by email upon the following:

        Jessica Natali, Esq.
        United States Attorney's Office
        Eastern District of Pennsylvania
        615 Chestnut Street, Suite 1250
        Philadelphia, PA 19106
        Jessica.Natali@USDOJ.GOV


                                        /s/    Bruce Barket
                                   Bruce A. Barket